AO 106 (Rev. 04/10) Application for a Search Warrant 

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Black ZTE Cellular Telephone
Seizure No. R2-18-0119 N-9

Case No. **18MJ5805**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-4, incorporated herein by reference.

located in the **Southern** District of **California**, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841, 846, 952, 960, 963 | Possession with intent to distribute controlled substance; Importation of a Controlled Substance; Conspiracy to commit same |

The application is based on these facts:

See attached Affidavit of Special Agent Jose Ortiz

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: ___ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jose Ortiz, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/9/18

*Judge's signature*

City and state: San Diego, CA

Hon. Barbara L. Major, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, JOSE L. ORTIZ, Special Agent with the Drug Enforcement Administration (DEA), being duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by the DEA for the following electronic devices seized from Diana Catalina RAMIREZ on October 18, 2018:

   (1) Black LG Cellular Telephone
       Seizure No. R2-18-0119 N-6
       (hereinafter **Target Device #1**);

   (2) Black LG Cellular Telephone
       Seizure No. R2-18-0119 N-7
       (hereinafter **Target Device #2**);

   (3) Gold Apple iPhone
       Model No. A1549
       IMEI No. 354444066982325
       (hereinafter **Target Device #3**);

   (4) Black ZTE Cellular Telephone
       Seizure No. R2-18-0119 N-9
       (hereinafter **Target Device #4**);

(collectively the **Target Devices**)

2. The **Target Devices** were seized from RAMIREZ on October 18, 2018 at the time of her arrest. It is believed that the **Target Devices** were used by RAMIREZ to communicate with coconspirators during a drug smuggling event involving cocaine within the Southern District of California, in S.D. Cal. Case No. 18MJ5443-WVG. Probable cause exists to believe that the **Target Devices** contain evidence relating to violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963. The **Target Devices** are currently in the possession of DEA, located at 4560 Viewridge Ave, San Diego, CA 92123.

1

3. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I submit this Affidavit in support of the application to search the **Target Devices** for and to seize the items set forth in Attachment B (incorporated herein) which I believe will be found in the items to be searched as described in Attachments A-1, A-2, A-3 and A-4 (incorporated herein).

4. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## EXPERIENCE AND TRAINING

5. I am a Special Agent (SA) with the United States Drug Enforcement Administration (DEA) and have been so employed since September 2017. I am currently assigned to Enforcement Group 5 at the San Diego Field Division (SDFD) of the DEA. Group 5 investigates major narcotic trafficking organizations operating from Mexico and elsewhere.

6. In the course of my work, I have become knowledgeable with the enforcement of state and federal laws pertaining to narcotics and dangerous drugs. I have received basic criminal investigative training, including nineteen weeks at the DEA Training Academy located in Quantico, Virginia. I have participated in drug trafficking investigations conducted by DEA and other law enforcement agencies. As such, I am aware that drug traffickers often conduct business via telephone and often use code and/or vague language to disguise their illegal activities.

7. I am presently assigned to an enforcement group that focuses on the organized trafficking of narcotics. During this time, I have participated in the investigation of various drug trafficking organizations ("DTOs") involved in the acquisition, importation,

transportation and distribution of controlled substances into and through the Southern District of California. During these investigations, I have used, and assisted in the use of, many various kinds of investigative techniques, including the use of cooperating informants, confidential sources ("CS"), live surveillance, the issuance of grand jury and administrative subpoenas, financial analysis, toll analysis, title III wire-intercepts, the search of electronic storage devices and interviews of witnesses, victims and defendants. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. Those involved in conspiracies to smuggle and traffic narcotics generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators. For example, load drivers smuggling controlled substances across the border are typically in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance.

8. This training and experience forms the basis for opinions expressed below. The following is based on my own investigation, oral and written reports by other law enforcement officers, debriefs, database and public records checks, searches, phone analysis, and other investigation. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

9. Based upon my training and experience as a special agent, and consultations with law enforcement officers experienced in narcotics trafficking and controlled substance manufacture and distribution investigations, and all the facts and opinions set forth in this

affidavit, I submit the following:

- a. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

- b. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

- c. Conspirators involved in the manufacture, distribution and importation of controlled substances and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

- d. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

- e. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular telephones because they can easily arrange to meet co-conspirators and or potential buyers at predetermined locations.

- f. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

- g. Conspirators involved in the manufacture, distribution and importation of controlled substances often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

- h. The use of cellular telephones by conspirators or drug smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

10. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

11. Based upon my training and experience as a special agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I have learned, through my training, education, and experience, that searches of cellular/mobile telephones associated with narcotics smuggling yield evidence:

    a. tending to indicate efforts to memorialize the delivery of controlled substances and/or the importation of controlled substances, including, but not limited to: phone logs, messages, photos, contact lists, and financial records;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the manufacture, distribution, importation or delivery of cocaine, or some other federally controlled substance within the United States, or conspiracy thereof;

    c. tending to identify co-conspirators, criminal associates, or others involved in the manufacture, distribution, importation or delivery of cocaine, or some other federally controlled substance within the United States, or conspiracy thereof;

5

    d.    tending to identify travel to or presence at locations involved in the manufacture, distribution, importation or delivery of cocaine, or some other federally controlled substance within the United States, or conspiracy thereof, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## PROBABLE CAUSE

12. On October 18, 2018, at approximately 11:50 a.m., RAMIREZ was driving a Chevy Equinox, bearing California license plate no. 8AYU288, northbound on Interstate-5 through the San Clemente Checkpoint, within the Southern District of California. U.S. Border Patrol Agents, wearing full-duty uniforms and driving a marked border patrol vehicle, observed suspicious driving habits as well as derogatory record checks and initiated a vehicle stop. A consensual search of RAMIREZ's vehicle revealed twelve (12) bricks, weighing approximately 13.55 kilograms (29.87 pounds), concealed within a bag in the spare tire compartment. The substances field-tested positive for cocaine, a schedule II controlled substance.

13. RAMIREZ was placed under arrest at approximately 12:15 p.m. and agents seized the **Target Devices** from RAMIREZ. However, RAMIREZ later alleged that **Target Device #3** did not belong to her.[1]

14. DEA special agents Jose Ortiz and James Eastman responded to the San Clemente Checkpoint. RAMIREZ was advised of her Miranda rights and elected to make a

---

[1] At the time of her arrest, RAMIREZ showed agents the **Target Devices** by scrolling through various communications. Nonetheless, no information viewed by the agents during these consensual searches is being offered to support probable cause in this application. Because Ramirez may proceed to trial, and consistent with a general practice of securing warrants for any electronic devices seized at the time of an arrest that could contain evidence of the offense, we are seeking to search all **Target Devices** seized.

6

statement. RAMIREZ admitted that she knowingly was transporting a controlled substance to Los Angeles for $800 and was expecting a phone text with further instructions.

15. Based upon my experience and investigation in this case, I believe that RAMIREZ as well as other persons yet unknown, were involved in an on-going conspiracy to facilitate the movement of narcotics into the United States and beyond. Further, based on my experience investigating narcotics traffickers, I believe that RAMIREZ used the **Target Devices** to coordinate with co-conspirators regarding the manufacture, distribution and importation of federally controlled substances, and to otherwise further this conspiracy within the United States. I also believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Devices** which may identify other persons involved in drug trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I further believe that information relevant to the drug trafficking activities of RAMIREZ such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices** described herein.

16. Finally, narcotics trafficking activities require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Given these facts, I respectfully request permission to search the **Target Devices** for the period of January 1, 2018 up to and including October 18, 2018.

## METHODOLOGY

17. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the

7

1  device is subscribed and the nature of the data stored on the device. Cellular/mobile devices
2  today can be simple cellular telephones and text message devices, can include cameras, can
3  serve as personal digital assistants and have functions such as calendars and full address
4  books and can be mini-computers allowing for electronic mail services, web services and
5  rudimentary word processing. An increasing number of cellular/mobile service providers
6  now allow for their subscribers to access their device over the internet and remotely destroy
7  all the data contained on the device. For that reason, the device may only be powered in a
8  secure environment or, if possible, started in "flight mode" which disables access to the
9  network. Unlike typical computers, many cellular/mobile telephones do not have hard
10 drives or hard drive equivalents and store information in volatile memory within the device
11 or in memory cards inserted into the device. Current technology provides some solutions
12 for acquiring some of the data stored in some cellular/mobile telephone models using
13 forensic hardware and software. Even if some of the stored information on the device may
14 be acquired forensically, not all the data subject to seizure may be so acquired. For devices
15 that are not subject to forensic data acquisition or that have potentially relevant data stored
16 that is not subject to such acquisition, the examiner must inspect the device manually and
17 record the process and the results using digital photography. This process is time and labor
18 intensive and may take weeks or longer.

19      18. Following the issuance of this warrant, I will collect the **Target Devices** and
20 subject them to analysis. All forensic analysis of the data contained within the telephones
21 and memory cards will employ search protocols directed exclusively to the identification
22 and extraction of data within the scope of this warrant.

23      19. Based on the foregoing, identifying and extracting data subject to seizure
24 pursuant to this warrant may require a range of data analysis techniques, including manual
25 review, and, consequently, may take weeks or months. The personnel conducting the
26 identification and extraction of data will complete the analysis within ninety (90) days,
27 absent further application to this court.

## CONCLUSION

20. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that RAMIREZ used the **Target Devices** to facilitate the offense of importing cocaine. Further, the **Target Devices** were likely used to facilitate the offense by transmitting and storing data, which is evidence of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963.

21. Because the **Target Devices** were seized during the investigation of RAMIREZ's smuggling activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by RAMIREZ continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from January 1, 2018 up to and including October 18, 2018.

22. Therefore, I respectfully request that the Court issue a warrant authorizing me, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachments A-1, A-2, A-3, and A-4, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

JOSE L. ORTIZ, Special Agent
Drug Enforcement Administration

Sworn to before me and subscribed in my presence
before me this ___9___ day of November, 2018

HON. BARBARA L. MAJOR
United States Magistrate Judge

9

## **ATTACHMENT A-4**

### PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963, is described below:

    (4)    Black ZTE Cellular Telephone
             Seizure No. R2-18-0119 N-9



currently in the possession of the Drug Enforcement Administration, located at 4560 Viewridge Ave, San Diego, CA 92123.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachments A-1, A-2, A-3, and A-4 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 1, 2018 to October 18, 2018.

   a. tending to indicate efforts to memorialize the delivery of controlled substances and/or the importation of controlled substances, including, but not limited to: phone logs, messages, photos, contact lists, and financial records;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the manufacture, distribution, importation or delivery of cocaine, or some other federally controlled substance within the United States, or conspiracy thereof;

   c. tending to identify co-conspirators, criminal associates, or others involved in the manufacture, distribution, importation or delivery of cocaine, or some other federally controlled substance within the United States, or conspiracy thereof;

   d. tending to identify travel to or presence at locations involved in the manufacture, distribution, importation or delivery of cocaine, or some other federally controlled substance within the United States, or conspiracy thereof, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of 21 U.S.C. §§ 841, 846, 952, 960, and 963.**